IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED
2011 JAN -3  P 12: 03

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| EDWARD R. LANE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 3:11-CV-1 |
| | ) |
| CENTRAL ALABAMA | ) JURY TRIAL DEMANDED |
| COMMUNITY COLLEGE and | ) |
| DR. STEVE FRANKS, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, Edward R. Lane, by and through his attorneys of record, and for his Complaint against the Defendants, Central Alabama Community College and Dr. Steve Franks, states as follows:

### PARTIES AND VENUE

1. Plaintiff, Edward R. Lane ("Lane"), is an adult male resident of the State of Alabama and St. Clair County.

2. Defendant Central Alabama Community College ("CACC") is a two-year college located in Tallapoosa County, Alabama.

3. Defendant Dr. Steve Franks ("Franks") is the current President of Central Alabama Community College, and held that same position during the relevant time period.

4. The Defendants are located and/or doing business within this judicial district and division. This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

5. In September of 2006, Lane accepted the position of Director of the Community Intensive Treatment for Youth ("C.I.T.Y.") Program.

6. When Lane took over management of the C.I.T.Y. Program, it was in dire financial straights, due to the loss of a grant worth approximately $600,000.

7. At that time, C.I.T.Y. had programs in ten cities throughout the state.

8. Due to the program's budget shortfall, however, the Mobile and Montgomery branches had been slated to close.

9. In order to properly evaluate the program's financial position, Lane immediately ordered an audit of the entire program.

10. In reviewing the results of that audit, Lane took note that one employee listed on the program's payroll, Sue Schmitz ("Schmitz"), did not appear to be coming to work.

11. As a result, Lane began to ask his employees what, if anything, Schmitz did for the program. The employees with whom Lane spoke could neither identify

her job nor remember her showing up to work.

12.     Lane next looked for evidence of Schmitz's work product, but was unable to locate any evidence of work that she had done for the program, or any time sheets submitted by her.

13.     As a result, Lane contacted Schmitz, and outlined for her the steps she needed to take to keep her job with the C.I.T.Y. program, including reporting to work regularly and submitting proper time sheets and regular work product.

14.     In response, Schmitz asked Lane if he was aware of how she got her job with the C.I.T.Y. program, noting that she had received her job from Dr. Paul Hubbert, Executive Secretary of the Alabama Education Association ("AEA"), and Roy Johnson, then-Chancellor of Alabama's two-year college system.

15.     Lane, thinking that Schmitz was simply dropping names, thought nothing of it, and the conversation ended.

16.     Schmitz, however, still refused to document how she spent her time, nor did she arrive at her office on a regular basis.

17.     In order to give Schmitz clear duties, with regular hours, Lane asked that she take a counseling position with the Huntsville branch of the C.I.T.Y. program.

18.     Such a position would have taken advantage of Schmitz's experience and background as a teacher, while also giving her a regular schedule and verifiable

work duties.

19.   Schmitz refused that position, and informed Lane that she would continue to work for the C.I.T.Y. program in the same manner she had done previously.

20.   Eventually, due to Schmitz's repeated refusals to show up at regular hours or to produce evidence that she had actually performed any work for the C.I.T.Y. program, Lane terminated Schmitz in October of 2006.

21.   After she was terminated by Lane, Schmitz informed Charles Foley, program coordinator for the C.I.T.Y. program's Madison County campus, that if Lane ever came to her in her capacity as a member of the state legislature to ask for state money, she would tell him that he was fired.

22.   Lane nonetheless had an outstanding first year as the Director of the C.I.T.Y. program.  He was not only able to avoid closing either the Mobile or Montgomery branches; he was even able to open a new branch in Florence.

23.   During his first year as Director, Lane also successfully relocated the Mobile and Jefferson programs to new facilities, and expanded the number of student slots in the Jefferson program from 30 to 45.

24.   In that same year, Lane decreased the C.I.T.Y. program's travel budget by 67%, and was able to get the program's first website operational.

25. All of this occurred within one year of Lane's inheriting a program that had lost a $600,000 grant, and was planning to close two facilities.

26. Under Lane's leadership, the program's budget for 2008 rose by $1.9 million.

27. By the time Lane was forced out of his position as Director, the C.I.T.Y. program had just enjoyed its highest success rate ever, measured by the number of students successfully completing the program.

28. During that time, there was a federal investigation of Alabama's two-year college system, based on evidence that suggested members of the state legislature were using the system to receive pay for no-show positions at various community colleges throughout the state.

29. During the course of that investigation, federal investigators contacted Lane to question him regarding Schmitz's role within the C.I.T.Y. program.

30. On November 13, 2006, Lane testified, before a grand jury, that Schmitz did not show up for her job with the C.I.T.Y. program, did not submit any time sheets, and that he was unable to find evidence of any work she had completed for her job with the program.

31. On August 26, 2008, Lane testified to these facts again during Schmitz's criminal trial in federal court.

32.     On February 18, 2009, Lane again testified to these facts in a second federal criminal trial of Schmitz.

33.     The proceedings of both trials, as well as allegations of corruption and "no-show" jobs, were matters of intense public interest and scrutiny, with numerous newspaper articles and television news reports covering both the investigations and the trials, to include a Pulitzer Prize for coverage generally of the two-year college system scandal for a reporter with The Birmingham News.

34.     Plaintiff, by name, and his testimony, were specifically mentioned in an article in The Birmingham News on August 26, 2008, and again in two separate articles in The Birmingham News on February 18, 2009 - "Prosecution rests in Schmitz case" and "Schmitz's boss 'shocked' to find her teaching high school instead of working."

35.     A federal jury found Schmitz guilty of abusing her position as a state legislator to receive a no-show position with the C.I.T.Y. program, in part due to Lane's testimony.

36.     As a member of the legislature, Schmitz had been on the House Education Appropriations committee with the Vice President of Central Alabama Community College, Betty Carol Graham ("Graham").

37.     Graham, as a legislator and Vice President of CACC, wielded a great

deal of influence within the CACC system.

38. Her influence within the community and system was so great that there is even a building named after her, the Betty Carol Graham Technology Center.

39. As a member of the Education Appropriations Committee, Graham also wielded influence over how much money the CACC system received from the legislature.

40. Graham, upon information and belief, was also friends with Schmitz.

41. Notwithstanding Lane's accomplishments, on January 9, 2009, Central Alabama Community College President Steve Franks sent a letter to Lane, informing him that he would be terminated effective January 31, 2009.

42. On that same date, Franks also sent letters of termination to twenty-eight other employees of the C.I.T.Y. program.

43. Franks cited budgetary shortfalls as the reason for those layoffs.

44. Franks later, however, rescinded the terminations of every employee except for Lane.

45. Lane was the only program Director in the entire two-year system who was terminated, even when other programs were in worse financial shape than the C.I.T.Y. program.

46. Upon information and belief, Graham used her influence within the

CACC system to have Franks, acting in his capacity as President of Central Alabama Community College, terminate Lane in retaliation for his testimony against Schmitz.

47.   Franks was aware that Plaintiff had performed very well as Director of the C.I.T.Y. Program, and that there was no legitimate reason to terminate Plaintiff.

48.   Franks was aware of Plaintiff's testimony in the investigation of the two-year college system, as well as the trials of Sue Schmitz and their outcome.

49.   Finally, Franks was aware of the intense public interest in the investigation, and subsequent trials, and could not have reasonably believed that terminating Plaintiff, in retaliation for Plaintiff's Constitutionally-protected speech, would not have violated his First Amendment rights.

## COUNT ONE
## ALA. CODE § 36-26A-3 (STATE EMPLOYEE PROTECTION ACT)
## (FRANKS)

50.   Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

51.   Franks, as Lane's supervisor, retaliated against him in the terms and conditions of his employment by terminating Lane from his position as Director of the C.I.T.Y. Program.

52.   Franks did so because Lane made reports, under oath, of Schmitz's violation of state laws, rules, and regulations, when she illegally used her position as

a state legislator to create for herself a no-show position within the C.I.T.Y. Program, and then committed fraud by falsifying her time sheets for the program.

53. As a proximate result of the Defendants' conduct, the Plaintiff has been damaged as aforesaid.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests this Court to award the following relief:

    (a)    Front pay;

    (b)    Back pay;

    (c)    Compensatory damages;

    (d)    That a trial by jury be held on all issues; and

    (e)    That Plaintiff be given any and all other relief, both at law and in equity, or to which he may otherwise reasonably be entitled, to include, but not be limited to, reinstatement.

**COUNT TWO**
**RETALIATION (FIRST AMENDMENT)**
**(CACC AND FRANKS)**

54. Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

55. In taking the above-described actions, the Defendants intentionally and willfully retaliated against the Plaintiff for his Constitutionally-protected speech

under the First Amendment.

56. The Plaintiff's Constitutionally-protected speech regarded a matter of public concern, the investigation of corruption within Alabama's two-year college system, and the subsequent trials of Sue Schmitz.

57. Said speech played a substantial part in the Defendants' decision to discharge the Plaintiff.

58. As a proximate consequence of the Defendants' violation of the First Amendment, the Plaintiff has suffered and will continue to suffer damage to his professional life and future career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff demands the following relief:

(a) Placement in the position in which he would have worked absent the Defendants' retaliatory treatment, or, in the alternative, front pay;

(b) Back pay;

(c) Injunctive relief;

(d) Pre-judgment interest;

(e) Attorneys' fees;

(f) Costs;

(g) Compensatory damages for loss of wages, loss of benefits, mental anguish, embarrassment, emotional distress; and

(h) Such other legal or equitable relief to which Plaintiff may be entitled, to include, but not be limited to, punitive damages against Defendant Franks.

## COUNT THREE
## 42 U.S.C. § 1985 (CONSPIRACY TO INJURE WITNESS FOR TESTIFYING) (FRANKS)

59. Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

60. In taking the above-described actions, said Defendant conspired with one or more persons to injure Plaintiff in his property -- namely, by conspiring to terminate Plaintiff as Director of the C.I.T.Y. Program -- on account of Plaintiff's having testified against Schmitz in federal court.

61. As a proximate consequence of said Defendant's violation of 42 U.S.C. § 1985(2), the Plaintiff has suffered and will continue to suffer damage to his professional life and future career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary

damages.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff demands the following relief:

(a) Placement in the position in which he would have worked absent said Defendant's conspiracy, or, in the alternative, front pay;

(b) Back pay;

(c) Injunctive relief;

(d) Pre-judgment interest;

(e) Attorneys' fees;

(f) Costs;

(g) Compensatory damages for loss of wages, loss of benefits, mental anguish, embarrassment, emotional distress;

(h) punitive damages; and

(i) Such other legal or equitable relief to which Plaintiff may be entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted,

_____
John D. Saxon
Alabama Bar No. ASB-3258-071J
Joseph A. Hutchings
Alabama Bar No. ASB-8363-H59H
Attorneys for Plaintiff

**OF COUNSEL:**

JOHN D. SAXON, P.C.
2119 3rd Avenue North
Birmingham, AL 35203
Tel:    (205) 324-0223
Fax:    (205) 323-1853
Email:  jsaxon@saxonattorneys.com
        jhutchings@saxonattorneys.com

**PLAINTIFF'S ADDRESS**

Edward R. Lane
Post Office Box 966
Ashville, AL 35953

**PLEASE SERVE DEFENDANTS BY**
**CERTIFIED MAIL RETURN RECEIPT REQUESTED**:

**CENTRAL ALABAMA COMMUNITY COLLEGE**
**c/o Dr. Steve Franks, President**
1675 Cherokee Road
Alexander City, AL 35010

**DR. STEVE FRANKS**
1675 Cherokee Road
Post Office Box 699
Alexander City, AL 35011-2917